**In re BUCKEYE COUNTRYMARK, INC., Debtor.**

**Bankruptcy No. 97–34911.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Nov. 16, 1998.

John Paul Rieser, Dayton, Ohio, Chapter 7 Trustee.

Alan J. Statman, Cincinnati, Ohio, for Fifth Third Bank.

Gregory L. Arnold, Toledo, Ohio, for Ronald Spoerl.

Ronald S. Pretekin, Dayton, Ohio, for William and Andy Hamman.

Thomas H. Lagos, Springfield, Ohio, for Bledsoe Farm, Mark Runyan, Doug Funderburg, Dan Ashcraft, Joe Isler, Bailey Farm, Tom and Richard Prince.

Nancy R. Page, Asst. Gen. Counsel, Commodity Futures Trading Commission, Washington, DC.

Benjamin Yale, Waynesfield, Ohio, for Joe Agle, Matt Jeffers and Eugene Wagner.

Gregory W, Hammond, Columbus, OH, for Darryl Klein.

United State Trustee, Columbus, Ohio.

## DECISION AND ORDER ON PERMISSIVE ABSTENTION CONCERNING HEDGE–TO–ARRIVE CONTRACTS

WILLIAM A. CLARK, Chief Judge.

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the standing General Order of Reference entered in this District on July 30, 1984. The Joint Motion for a declaratory judgment is a non-core proceeding pursuant to 28 U.S.C. § 157(c)(1).

This matter came before the court for hearing on the Joint Motion of John Paul Rieser, Chapter 7 Trustee, and Fifth Third Bank for Declaratory Judgment Finding That Buckeye Countrymark, Inc.'s Hedge–to–Arrive Contracts are Valid, Enforceable Contracts. [*See* Doc. # 61–1, 2, 3, 4]. On September 29, 1998 the court held a hearing and entered a written opinion supplementing its oral decision. At that hearing, the court noted its authority to abstain from determining the issue of the validity and enforceability of the Hedge–to–Arrive (hereinafter "HTA") contracts. Having raised the issue of permissive abstention *sua sponte*, the court granted all counsel thirty (30) days to file their briefs as to whether the court should abstain from deciding the issue. The court, having received the motions and memoranda in support thereof, is now ready to render its decision on this matter.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The principle issue this court must confront is whether or not to abstain from determining whether the HTA contracts are valid pursuant to the Commodity Exchange Act (hereinafter "CEA"). 7 U.S.C. § 1 *et seq.* Buckeye Countrymark (hereinafter "Debtor") and Fifth Third Bank assert that HTA contracts are legally enforceable and that this court should retain jurisdiction to decide whether the HTA contracts are valid. The Commodity Futures Trading Commission (hereinafter "CFTC") has initiated an administrative proceeding against the Debtor, among others, which involves the validity of the HTA contracts. The CFTC argues that this court is without jurisdiction to adjudicate whether or not the HTAs are valid and enforceable. The question for the court then is whether it has jurisdiction over the matter of the HTA contracts and whether it can and will abstain from determining the matter of the HTA contracts.

A court may refrain from determining the validity of the HTA contracts under the doctrine of primary jurisdiction. Primary jurisdiction is used by courts to allocate initial decision making responsibility between agencies and courts where agency and court jurisdiction to resolve disputes and issues

overlap. *See Order of Railway Conductors v. Pitney,* 326 U.S. 561, 567, 66 S.Ct. 322, 90 L.Ed. 318 (1946) (intricate dispute between two unions regarding provision of services to bankrupt railroad should have been deferred by railroad reorganization court to Railway Labor Adjustment Board and court should have stayed proceedings before it pending resolution by the Board); *Smith v. Hoboken R.R. Co.,* 328 U.S. 123, 130, 66 S.Ct. 947, 90 L.Ed. 1123 (1946) (issue of whether a bankrupt railroad had forfeited track rights should have been deferred by railroad reorganization court to the Interstate Commerce Commission in view of statute requiring commission certificate for abandonment of tracks); *Nathanson v. National Labor Relations Board,* 344 U.S. 25, 30, 73 S.Ct. 80, 97 L.Ed. 23 (1952) (liquidation of unfair labor practice claim should have been deferred by bankruptcy court to the NLRB for it to determine the appropriate remedy). In *In re The Drexel Burnham Lambert Group, Inc.,* 120 B.R. 724, 740 (Bankr.S.D.N.Y.1990), for example, the bankruptcy court relied on the doctrine of primary jurisdiction to determine whether the rules and regulations of the Chicago Board of Trade were determinative of whether membership would pass to the estate. In deferring the matter to the Chicago Board of Trade, that court noted "[t]hat doctrine provides that a court with jurisdiction may defer resolution of a technical factual issue to an administrative agency having expertise beyond the normal competence of judges in order to preserve consistency and uniformity in regulation of the business entrusted to that agency." *In re Drexel Burnham,* 120 B.R. at 740; *see also In re McLean Indus., Inc.,* 76 B.R. 328, 331 (Bankr.S.D.N.Y.1987); *Plum Run Serv. Corp. v. United States (In re Plum Run Serv. Corp.),* 167 B.R. 460, 466 (Bankr. S.D.Ohio 1994); *In re Vantage Transport, Inc.,* Case No. 3–91–02568 (1993) (Clark, J.) (abstaining from determining issue of tariffs and deferring to the expertise and jurisdiction of the Interstate Commerce Commission.)

■ To be sure, the validity of the HTA contracts involve very technical questions of fact and expert knowledge of questions of law pursuant to the CEA. This court's reasoning is concomitant with the directives of the Supreme Court. In two cases, *Ricci v. Chicago Mercantile Exch.,* 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973), and *Chicago Mercantile Exch. v. Deaktor,* 414 U.S. 113, 94 S.Ct. 466, 38 L.Ed.2d 344 (1973), the Supreme Court discussed the applicability of the doctrine of primary jurisdiction to cases involving the interpretation of the rules of the commodity exchange. The Court placed heavy emphasis on agency expertise on questions concerning the rules of the commodity exchanges. Those cases held that while primary jurisdiction is a "discretionary doctrine," the scope of a court's discretion was not unlimited. Hence, the Court in *Deaktor* reversed the district court and the court of appeals for refusing to defer to agency expertise in holding that questions concerning exchange rules "should be routed in the first instance to the agency." *See S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exchange, Inc.,* 1993 WL 322836, at 4 (S.D.N.Y.) Although the Supreme Court decided those cases before the 1974 amendments to the CEA, the amendments to the Act "only increased the scope of CFTC oversight of exchange self-regulation." *Id.* at 6; *see also American Agric. Movement, Inc. v. Board of Trade,* 977 F.2d 1147, 1155 (7th Cir.1992) ("The 1974 Act . . . created the [CFTC] as an independent federal regulatory agency, granting it broad powers to administer and enforce the [CEA].")

The resolution of this issue requires examination of the CEA as well as the rules and regulations governing commodities trading which is not within the general competence of this court. *See Patry v. Rosenthal & Co.,* 534 F.Supp. 545 (D.Kan.1982) (holding in part federal district court would not exercise doctrine of primary jurisdiction to defer to Commodity Futures Trading Commission dispute between commodity broker and customer where claims raised were well within expertise of court and *did not require any esoteric knowledge of commodities markets peculiarly within possession of Commission,* claims did not involve interpretation of regulations promulgated by Commission or put court in position of conflict with Commission) (emphasis added). The CFTC, like the Chi-

cago Board of Trade in *Drexel Burnham,* has a "substantial degree of power to interpret [its] own rules." *In re Drexel Burnham,* 120 B.R. at 741. The question of whether or not these HTA contracts are invalid, off-exchange contracts used for trade requires the expertise and specialized knowledge of the CFTC and therefore falls within the scope of self-regulation (commodity trading) entrusted to it. As the *Drexel Burnham* court noted, "[t]here is plain merit in having one body, be it court or agency, consider [the] entire ball of wax." *Id.* at 742. In that spirit, this court will invoke the doctrine of primary jurisdiction for the principal reason of avoiding interference with the Commission's administration of the CEA regulatory scheme. *See Jones v. B.C. Christopher & Co.,* 466 F.Supp. 213, 221–222 (D.Kan.1979). Therefore, the court will refrain from deciding whether or not the HTA contracts are valid and will defer to the expertise of the CFTC.

Until a decision is reached in the CFTC proceeding, this court will hold in abeyance its decision whether it will invoke the rule of permissive abstention. However, as the court stated in its October 6, 1998 decision, the matter of the HTA contracts is not a "contested matter" under Fed.R.Bankr.P. 9014. Rather, the proceeding regarding the HTA contracts was "to recover money or property ..." Fed.R.Bankr.P. 7001(1) (1994). Therefore, the matter of the HTA contracts must proceed as an adversary proceeding pursuant to Fed.R.Bankr.P. 7001 in order for this court to adjudicate any issues that may still be pending subsequent to the administrative proceeding.

### CONCLUSION

It is clear to the court, that at this time, the federal law issues of the CEA predominate over the bankruptcy and state issues. The CFTC proceeding is primarily one of federal law governing valid commodity trading practices with the only bankruptcy issues remaining whether or not these HTA contracts constitute executory contracts under 11 U.S.C. § 365. That issue can be determined as a core proceeding once the threshold commodity contract issues have been re-solved in the CFTC proceeding. The body of law governing commodity trading is complex and requires a specialized knowledge of the law as well as a refined knowledge of its discourse. This court believes that the CFTC is well within its administrative power to resolve the issues surrounding the validity of the HTA contracts. The case law clearly shows that Congress granted the CFTC the jurisdiction to determine matters that arise under the CEA. Therefore, the court shall recognize the judicial doctrine of primary jurisdiction and allow the CFTC to proceed with the administrative action against the various parties which includes the Debtor.

For the reasons stated above, the court shall refrain from adjudicating the validity of the HTA contracts and will await the decision in the CFTC administrative proceeding. The state court actions remain subject to the automatic stay. The court will hold the issue of permissive abstention in abeyance until a decision is reached in the CFTC administrative proceeding.

IT IS SO ORDERED.